UNITED STATES of America and Joseph M. Bilunas, Revenue Agent of the Internal Revenue Service, Petitioners,

v.

BARTER SYSTEMS, INC., and Harry Hayter as President of Barter Systems, Inc., Respondents.

No. Civ. 81–0–191.

United States District Court, D. Nebraska.

Sept. 16, 1981.

Richard H. Gregory, Tax Div., Dept. of Justice, Washington, D.C., for petitioners.

Clifton P. Rose, Washington, D.C., for respondents.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This action is before the Court to enforce an Internal Revenue Service (IRS) summons pursuant to 26 U.S.C. §§ 7402(b) and 7604(a). The summons was served on the respondents, Barter Systems, Inc. (BSI) and Harry Hayter, president of BSI, on September 9, 1980. On April 8, 1981, an order was issued directing respondents to show cause why they should not be compelled to comply with the summons. A hearing was held on this matter on May 4, 1981, and based on the evidence presented and the briefs of counsel, the Court enters the following memorandum opinion.

The facts developed at the hearing are these. Respondent BSI is a barter exchange. A barter exchange acts as a clearing house or middle man for the purchase of goods and services by exchange members. When a member sells goods or provides services to another member, he is credited with barter units based on the retail dollar value of the product or service he provides. After he has earned barter units, a member may purchase goods and services from other members with barter units serving as the medium of exchange. In addition, members may make credit purchases within certain limits.

BSI coordinates and keeps records of the barter unit purchases. It assigns an authorization number to each transaction and it furnishes account statements on a monthly basis to its members. In return for the services it renders, BSI charges a fee of ten per cent of each purchase. This fee is payable in barter exchange units and is credited to BSI's own account. BSI also

charges its members a one-time membership fee and annual dues, both paid in cash.

Respondent Harry Hayter was the president of BSI at the time the summons was served, but has since sold his entire interest in the company and is no longer involved with it in any capacity.

In September, 1979, the Director of the IRS Examination Division instructed District Officers to "initiate an Information Gathering Project to identify organized bartering exchanges * * * and to secure the identities of participants and details of their barter transactions." Exhibit No. 5. Once the exchanges and their members were identified, the returns of both were to be examined to determine compliance with the tax laws. The directive further provided that if an exchange declined to furnish information concerning its members, a "John Doe" summons was to be issued as prescribed in 26 U.S.C. § 7609(f). Section 7609(f) sets forth special procedures to be followed when a summons does not identify the person whose liability is being investigated.[1] The procedures outlined in the directive were formally incorporated into the IRS Manual on March 11, 1980.

Pursuant to the above directive, the Omaha, Nebraska, District of the IRS selected for examination several barter exchanges, including BSI, from the telephone directory. The examination of the tax returns of BSI was assigned initially to Revenue Agent Thomas Hosier, and subsequently to Revenue Agent Joseph Bilunas, one of the petitioners herein. In furtherance of his investigation of BSI, Mr. Bilunas issued the summons in question, specifying for production the following records for the periods from June 1, 1978, through December 31, 1979:

1.  Books, papers, account cards or other records upon which the following information is recorded:

(A) All members' names and account numbers;

(B) Exchange member transactions including the price and/or trade units assigned to goods or services rendered or received;

(C) All initiation or membership fees, and other income, including commissions on members' transactions.

2.  The disbursements journal and trade credit ledger.

3.  All monthly account statements for each exchange member.

BSI indicates that it is willing to produce all of the summoned records with the exception of a list of members of the exchange.

The summons in question was issued pursuant to 26 U.S.C. § 7602. That provision permits the IRS to issue a summons "[f]or the purpose of ascertaining the correctness of any return, making the return where none has been made, determining the liability of any person for any internal revenue tax * * * or correcting any such liability." As noted in *United States v. LaSalle National Bank*, 437 U.S. 298, 317–18 n. 19, 98 S.Ct. 2357, 2368 n. 19, 57 L.Ed.2d 221 (1978), the dispositive question in an action brought to enforce a Section 7602 summons is whether the summons was issued in good faith pursuit of the congressionally authorized purposes. In *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964), the Supreme Court announced sev-

---

1. 26 U.S.C. § 7609(f) provides in its entirety as follows:

(f) Additional Requirement in the Case of a John Doe Summons.—Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

eral elements of a good faith exercise of the summons authority under Section 7602:

[The Service] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed.... [A] court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.

Petitioners, through the declaration of Mr. Bilunas, have made a prima facie showing that the four *Powell* requirements have been met. Specifically, petitioners declare that the summons was issued for the purpose of determining the correctness of the income tax returns filed by BSI, that the records sought by the summons were necessary to properly investigate the returns, that the records were not already in the possession of the IRS, and that all administrative steps necessary for the issuance of a summons have been followed. As already mentioned, respondents have agreed to comply with the summons in all respects with the exception of producing a list of the members of the exchange. With regard to the names of the members, respondents seek to show that a membership list is not relevant to the examination of BSI's returns, that the IRS has not followed the administrative steps required by the Code, and that the summons was not issued for a legitimate purpose. Respondents do not dispute that the records requested were not already in the possession of the IRS.

Concerning the relevancy of the identity of the members of the exchange, the Court has no difficulty in concluding that the names of the members are relevant to an investigation of the tax liability of the exchange itself. According to the testimony of Mr. Bilunas, nearly eighty per cent of the business expenses claimed by BSI on its return for 1978 were paid in barter units to members of the exchange identified only as numbered accounts on the exchange's books. In order to verify the accuracy of these records, it is obvious that the names of the members to whom these expenses were paid are necessary. With respect to income received by the exchange from members, the identities of the members are similarly relevant for verification purposes.

Respondent's next contention is that the IRS has not followed the administrative steps required by the Code. The IRS claims authority to issue the summons in question under Section 7602 and respondents do not claim that the administrative steps required for issuance of a summons under that section were not followed. Rather, respondents argue that the procedures required for issuance of a John Doe summons under Section 7609(f) should have been followed in this instance. Thus, this issue will be determined once it is decided whether the use of a Section 7602 summons is permissible under the facts of this case.

Respondent's most serious contention is that the summons was not issued for a legitimate purpose. Pursuant to the declaration of Mr. Bilunas, the summons was issued for the purpose of determining the correctness of the income tax returns filed by BSI and the Court so finds that this was one of the purposes of the summons. From the evidence presented at the hearing, however, it is clear that another significant purpose of the summons was to obtain information for use in the IRS's barter exchange project. According to the testimony of A.W. Peterson, group manager for the Omaha District of the IRS, who authorized the summons in question, BSI was selected for examination pursuant to the directive outlining the barter exchange project. Hearing Transcript 68. Mr. Peterson also testified that information obtained from the summons issued to BSI would be used in the barter exchange project. Hearing Transcript 65.

4

The first identified purpose of the summons, to ascertain the correctness of BSI's returns, is squarely within the statutory language of Section 7602. The second purpose, to obtain data for the IRS's barter exchange project, requires closer scrutiny. As to the IRS's authority to utilize for research purposes data obtained from a summons, the Eighth Circuit has recently concluded that it is permissible for the IRS to issue a summons to an identified taxpayer to determine the correctness of his return, even though the primary purpose of the examination is to provide data for research purposes. *United States v. Flagg*, 634 F.2d 1087 (8th Cir.1980). In so finding, the Court reasoned that:

> In construing the summons authority claimed under section 7602, judicial deference to congressional intent requires that if the claimed authority is necessary for the effective performance of the congressionally imposed responsibilities to enforce the tax laws, "that authority should be upheld absent express statutory prohibition or substantial countervailing policies." (Citations omitted.)

*United States v. Flagg, supra,* 634 F.2d at 1091.

In the instant case, however, one of the announced purposes of the barter exchange project is to obtain the identities of exchange members specifically in order to determine their compliance with the tax laws. The question thus becomes whether "express statutory prohibitions or substantial countervailing policies" do not permit use of Section 7602 summons authority in this instance. This appears to be the type of situation where, as acknowledged in the IRS Manual Supplement of March 11, 1980, the express statutory requirements of Section 7609(f) for a John Doe summons must be met.

The IRS cites *United States v. Constantinides*, 47 AFTR 2d 81–321 (D.Md.1980), for its contention that it need not resort to a John Doe summons under these circumstances. In *Constantinides*, the Court enforced a Section 7602 summons issued to a barter exchange seeking the identity of its members. In that case, however, the Court specifically found that the summons was not issued for the purpose of investigating the tax liability of members of the exchange. *United States v. Constantinides, supra,* 47 AFTR 2d at 81–324. Here, on the other hand, it is acknowledged by the IRS that BSI was selected for examination pursuant to the barter exchange project, that information obtained by the summons will be used in the project, and that one of the primary goals of the project is to investigate the tax liability of members of barter exchanges. Based on these facts, the Court concludes that at least one of the purposes of the instant summons was to aid in the investigation of unidentified members of the exchange. The *Constantinides* decision, therefore, is distinguishable from the instant case.

The mere fact that the summons may have a dual purpose is not, of course, grounds in itself for objection. Because Section 7602 draws no distinction between the civil and criminal aspects of tax fraud, for instance, summonses have been upheld even though the particular conduct being investigated carried the potential of criminal liability. *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). As explained in *United States v. LaSalle National Bank, supra,* 437 U.S. at 311–12, 98 S.Ct. at 2364–65, the IRS could use its summons authority under Section 7602 to uncover information about the tax liability created by a fraud even after a criminal prosecution has begun. Because of substantial countervailing policy interests, however, a prophylactic restraint has been imposed on the summons authority at the point of recommendation for prosecution to the Department of Justice. *Id.* Prior to recommendation to the Department of Justice, the summons authority must, nonetheless, be exercised in good faith and not after the IRS has abandoned the pursuit of civil tax determination or collection. *Id.* at 316–18, 98 S.Ct. at 2367–68. Where the issue is whether the summons authority is being used solely in aid of a criminal investigation, then, those opposing enforcement

of a summons bear the burden of disproving the actual existence of a valid civil tax determination or collection purpose by the IRS. *Id.* As emphasized by the Court in *LaSalle National Bank*, however, these requirements were "not intended to be exclusive. Future cases may well reveal the need to prevent other forms of agency abuse of congressional authority and judicial process." *Id.* at 318 n. 20, 98 S.Ct. at 2368 n. 20.

As implied above, the dual purpose doctrine evolved in *LaSalle National Bank* is premised on the finding that "Congress has not categorized tax fraud investigations into civil and criminal components." *Id.* at 311, 98 S.Ct. at 2365. The statutory premise relevant to the instant case, however, is that by passage of Section 7609(f), Congress has drawn a distinction between summonses issued for the purpose of investigating identified individuals and summonses issued for the purpose of investigating unidentified individuals. Here, the Court has found that the summons in question was issued for both purposes, and the issue is, therefore, whether under these circumstances the IRS need not comply with the special limiting provisions of Section 7609(f).

██ Clearly, Section 7609(f) was passed as a limitation on the broad investigative powers given the IRS under Section 7602. Prior to the passage of Section 7609(f), courts had held that it was permissible for the IRS to obtain information concerning the tax liabilities of unidentified individuals by the use of Section 7602 summonses issued to third parties. *See, e.g., United States v. Theodore*, 479 F.2d 749, 754 and 755 (4th Cir.1973). By passage of Section 7609(f), Congress intended to preserve the IRS's use of the John Doe summons as an investigative tool, but within the specific limitations enumerated in that statute. *See* H.R.Rep. No. 94–658, 94th Cong., 2d Sess., *reprinted in* [1976], U.S.Code Cong. & Ad. News 2897, 3207. Under the instant circumstances, where the IRS as an institution has announced its intention to investigate unidentified members of barter exchanges, the Court concludes that the special limitations contained in Section 7609(f) may not be avoided even though the tax liability of an exchange may also be at issue.

Indirect support for this conclusion may be found in *LaSalle National Bank, supra.* In *LaSalle National Bank*, the Court recognized that even upon recommendation to the Justice Department for prosecution, the civil and criminal elements of an investigation do not separate completely, yet found it necessary to prohibit use of a Section 7602 summons after recommendation to the Justice Department in order to safeguard important policy interests. Here, in order to comply with the express statutory limitations contained in Section 7609, this Court finds it necessary to deny enforcement of the instant summons even though one of its purposes, investigation of a named barter exchange, is within the ambit of Section 7602. So long as the IRS intends to use the information obtained from the summons to investigate unidentified members of the barter exchange, it must first comply with the special provisions set forth in Section 7609(f).

The Court assumes that in any investigation of a named taxpayer, information may be discovered that is relevant to the tax liability of individuals other than those identified in the summons. Whenever a third party record keeper, such as a bank, is being investigated, the identity of its customers may not only be relevant to a determination of the record keeper's liability, but also incidentally bear upon the correctness of the returns filed by the customers themselves. On those facts, compliance with Section 7609(f) may not be required. The Court emphasizes, however, that that is not the case presently before it. Here, the IRS as an institution has announced that one of the primary purposes of the barter exchange program is to determine the correctness of returns filed by unidentified members of barter exchanges and the agent who authorized the particular summons in question acknowledged that information obtained by means of the

summons would be utilized in the barter exchange program. Based on these facts, the Court holds that enforcement of the summons should be denied for failure to comply with the provisions of Section 7609(f).

A separate order in accordance with this memorandum will be entered this date.