UNITED STATES of America and
Eugene R. Govern, Jr., Revenue
Agent, Petitioners,

v.

Frank CRITELLI, President of Melbourne Concept, Inc., Respondent.

Misc. Civ. No. 81-235.

United States District Court,
W.D. New York.

July 27, 1983.

Salvatore Martoche, U.S. Atty., Carol E. Heckman, Asst. U.S. Atty., Buffalo, N.Y., for petitioners.

John R. Hartje, New York City, for respondent.

MEMORANDUM AND ORDER

ELFVIN, District Judge.

Petitioners seek enforcement under 26 U.S.C. § 7402(b) and 7604(a) of an Internal Revenue Service ("IRS") summons issued in the course of an investigation into the income tax liabilities of Melbourne Concept, Inc. ("Melbourne") for tax years ended 1977 through 1980. Respondent Frank Critelli, Melbourne's President, is in possession of the summonsed items. In support of the Petition, Agent Govern submitted his declaration under penalty of perjury that he is conducting the aforesaid investigation and that Critelli did not respond to the summons as required. On June 12, 1981 attorneys representing Melbourne telephoned Govern, offering to supply some of the summonsed items on the condition that Govern abandon any interest in the remaining summonsed items or, alternatively, to furnish the summonsed items with the names and addresses of Melbourne's clients redacted therefrom. These alternative conditions were unacceptable to Govern and were rejected.

Govern declared further that the summonsed items are not already in the IRS's possession, except for an incomplete list of Melbourne's clients' names and addresses. By a separate affidavit replying to Critelli's opposition, Govern affirms among other things that the summonsed items are sought solely in connection with his investigation of Melbourne's civil tax liabilities and that he has not referred any part of the matter to the IRS's Criminal Investigation Division. I note at the outset that this assertion satisfies respondent's objection that it may be that the summonsed items are impermissibly being sought in connection with a criminal investigation (see, *United States v. Marine Midland Bank of*

*New York,* 585 F.2d 36, 39 (2d Cir.1978)). Respondent has not seriously drawn into question the good faith civil investigative purpose of the IRS.

In response to an Order to Show Cause why the IRS summons should not be enforced, oral argument was had and both sides have submitted affidavits and memoranda in support of their positions.

Petitioners argue that the investigation of Melbourne's tax liability has focused upon Melbourne's gross receipts, abandonment losses and deductions for pension plan contributions as reported in its tax returns for the years involved. Melbourne's business enterprise is described as a "tax shelter" operation, in the course of which Melbourne handles investments in the Department of the Interior's Bureau of Land Management's oil and gas lease sale program. Petitioners assert that the summonsed items, particularly those containing information regarding Melbourne's customers, are necessary to check the accuracy of Melbourne's returns by enabling petitioner

"to follow transactions through Melbourne's records, to trace actual receipts and verify that they were properly recorded, to trace checks issued and ascertain their purposes and whether the items they represent are properly capitalized or expensed, and to determine which transactions must be verified by actually contacting third parties [, without which information Govern will be unable] to determine the correctness and even the fact of Melbourne's treatment on its returns of innumerable transactions." Petitioner's Memorandum of Law 7.

In opposition to enforcement Critelli urges that petitioners seek the summonsed items, not solely for the purpose of investi-

gating Melbourne's tax liability, but also to aid investigation of Melbourne's clients. Hence, it is urged, the summons must be regarded as a "John Doe" summons, obligating petitioners to proceed as required by 26 U.S.C. § 7609(f).[1] Critelli contends that Govern's attendance at the trial in *Nicolazzi v. Commissioner of Internal Revenue,* 79 T.C. 109, a proceeding brought by two of Melbourne's clients to determine the deductibility of the fee paid to Melbourne for investment advice and clerical services, plus the existence of IRS investigations into the tax liabilities of certain of Melbourne's clients, support Critelli's view that one aspect of the IRS summons at issue is a John Doe summons. Further support for this position is found in Govern's declaration in his reply affidavit that he has been involved in investigations of investors who participated in an oil and gas lease lottery shelter program and, in the course of his investigation of Melbourne, has forwarded to his supervisor information regarding the identities of Melbourne's clients which he learned "on the basis of an assumption that they may have treated their transactions with Melbourne in a manner which was not consistent with" the IRS's position that Melbourne's clients' fee payments are not deductible on their tax returns. Govern Reply Affidavit ¶¶ 14, 16. Govern maintains, however, that his investigation of Melbourne is not conducted wholly or partly for the purpose of discovering Melbourne's clients' names and that the instant summons is sought to be enforced in good faith solely for the purpose of investigating Melbourne's tax liabilities. Critelli does not deny that there exists a current civil tax liability investigation of Melbourne and

---

1. Such subsection states:

"Additional requirement in the case of a John Doe summons.—Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons.

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources."

that the instant summons is related to such investigation.

Critelli urges that an evidentiary hearing is required to determine whether the summons at issue is a John Doe summons and, if so, whether the section 7609 standards for such summonses are satisfied here. He urges further that, should the summons be found enforceable as a John Doe summons, its enforcement should be stayed pending the outcome of the *Nicolazzi* litigation because the Tax Court's decision in that case might "moot" the IRS's supposed purpose of obtaining information regarding Melbourne's clients. This last request by Critelli was itself mooted, however, by a decision in *Nicolazzi* July 21, 1982, holding that the fee paid to Melbourne by the Nicolazzis is a nondeductible capital expenditure.

Critelli's principal reliance is upon *U.S. v. Barter Systems, Inc.*, 574 F.Supp. 1, 49 A.F.T.R.2d 82–621 (D.Neb.1981), holding that, where an IRS summons has an expressly acknowledged dual purpose of uncovering information regarding the tax liability of a barter exchange,[2] and the identities and transactions of its clients, the subsection 7609(f) summons requirements must be satisfied. Correctly noting that decisions of the United States Supreme Court impose the requirements that an IRS section 7602 summons be enforced only when issued in good faith and relevant to a congressionally authorized purpose (*United States v. LaSalle National Bank*, 437 U.S. 298, 317–318, 98 S.Ct. 2357, 2367–2368, 57 L.Ed.2d 221 (1978); *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964)) and that "[t]he mere fact that the summons may have a dual purpose is not * * * grounds for objection" (574 F.Supp. at 4, 49 A.F.T.R.2d 82–624), the *Barter Systems* court concluded that effectuation of the congressional intent "to preserve the IRS's use of the John Doe summons as an investigative tool, but within the specific limitations enumerated [by section 7609(f)]" required "that the special limitations contained in Section 7609(f) may

not be avoided even though the tax liability of an exchange may also be at issue" (574 F.Supp. at 5, 49 A.F.T.R.2d at 82–624–625). The court repeatedly emphasized that the IRS had expressly announced an intention "to determine the correctness of returns filed by unidentified members of barter exchanges" (574 F.Supp. at 5, 49 A.F.T.R.2d at 82–625) and distinguished the factually similar case of *United States v. Constantinides*, 47 A.F.T.R.2d 81–321 (D.Md.1980), on the grounds that the *Constantinides* court "specifically found that the summons was not issued for the purpose of investigating the tax liability of members of the exchange." (574 F.Supp. at 4, 49 A.F.T.R.2d at 82–624). The *Barter Systems* court found "indirect support" for its holding in *United States v. LaSalle National Bank, supra,* in which "the Court recognized that even upon recommendation to the Justice Department for prosecution, the civil and criminal elements of an investigation do not separate completely yet found it necessary to prohibit use of a Section 7602 summons after recommendation to the Justice Department [for criminal prosecution] in order to safeguard important policy interests." 574 F.Supp. at 5, 49 A.F.T.R.2d at 82–625.

Subsection 7609(f) was enacted as part of the Tax Reform Act of 1976, Pub.L. No. 94–455, 90 Stat. 1520 (1976). The entire section 7609 was intended "to provide certain checks on IRS's use of third-party summonses." *United States v. New York Tel. Co.,* 644 F.2d 953, 956 (2d Cir.1981). The legislative history illuminates the treatment of John Doe summonses in the section 7609 scheme:

"In the case of a 'John Doe' situation, where the Service has knowledge of a particular transaction or transactions which may affect tax liability, but does not know the identity of the person involved, it is obviously not possible to comply with the notice rules outlined above. Typically, when cases like this have arisen in the past, the Service has issued a

---

**2.** "A barter exchange acts as a clearing house or middle man for the purchase [by barter] of

goods and services by exchange members." 574 F.Supp. at 1, 49 A.F.T.R.2d at 82–621.

'John Doe' summons to the third-party record keeper, in which the record keeper is requested to supply all information in its possession relating to such transactions (including any information which the third party may have concerning the identity of the taxpayer).

"Recognizing that issues of privacy are involved in connection with the John Doe summons, the Service has made sparing use of this investigative tool. Nonetheless, there are cases where the facts of a particular case are so suggestive of possible tax liability that the Service could be remiss in its duty of collection and enforcement of the Internal Revenue laws if it did not investigate. In some such circumstances, the John Doe summons is the only practical investigative tool which is available.

"While the committee believes it is important to preserve the John Doe summons as an investigative tool which may be used in appropriate circumstances, at the same time, the committee does not intend that the John Doe summons is to be available for purposes of enabling the Service to engage in a possible 'fishing expedition.' For this reason, the committee intends that when the Service does seek court authorization to serve John Doe summons, it will have specific facts concerning a specific situation to present to the court.

"On the other hand, the committee does not intend to impose an undue burden on the Service in connection with obtaining a court authorization to serve this type of summons. For example, the Service is not required to show that there is 'probable cause' (within the meaning of the criminal laws relating to the issuance of a search warrant) to believe that a criminal act has occurred, or even that civil fraud has occurred, or might be involved."

H.R.Rep. No. 658, 94th Cong.2d Sess. 310–311, *reprinted in* [1976] U.S.Code Cong. & Ad.News 2897, 3206–3207.

It is important for present purposes to note, as did the court in *United States v.*

*New York Tel. Co., supra,* at 957, that the section 7609 procedures were "not designed to give the taxpayer new substantive rights." This observation admittedly has somewhat less force in regard to subsection 7609(f) than to the other provisions of section 7609, inasmuch as said subsection does arguably augment the substantive grounds on which a third-party summons can be challenged, by its provision for a judicial determination that a John Doe summons satisfies the three criteria therein set forth. However, the context of its enactment reveals that subsection 7609(f) was not intended to meet a perceived need for substantive safeguards more protective than those available to an intervening taxpayer in other third-party summons cases, but to make up in some measure for the ineffectiveness of such safeguards where taxpayers cannot readily intervene to invoke those safeguards in their own behalf—and in some cases, as in this case, cannot intervene at all without revealing the information supposedly sought by the third-party summons—namely, the taxpayers' identities. As the legislative history set forth above shows, this added substantive safeguard is intended to be minimal, not unduly burdening the IRS as would requiring a showing of probable cause to believe that a criminal infraction has occurred or even "might be involved."

This view of the IRS Code provision at issue greatly undermines the "indirect support" for its holding found by the *Barter Systems* court in *United States v. LaSalle National Bank, supra.*

In *United States v. LaSalle National Bank,* the United States Supreme Court reiterated the rule that a civil summons issued pursuant to 26 U.S.C. § 7602 would be enforced notwithstanding the possibility that "criminal consequences" to the taxpayer might follow therefrom. 437 U.S. at 309, 98 S.Ct. at 2363. The Court went on to explain the purposes of and to clarify the judicial "prophylactic" rule, first announced in *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), that an IRS civil summons will not be enforced

when the IRS has referred the taxpayer to the Department of Justice for criminal prosecution, noting two policy interests underlying this rule:

"Nothing in § 7602 or its legislative history suggests that Congress intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury as a principal tool of criminal accusation. * * *. The likelihood that discovery would be broadened or the role of the grand jury infringed is substantial if post-referral use of the summons authority were permitted." 437 U.S. at 312, 98 S.Ct. at 2365. (citation omitted.)

The distinctions between the contexts and rationales of the *LaSalle National Bank* and the *Barter Systems* decisions are great. In *LaSalle National Bank* and *Donaldson v. United States*, which *LaSalle* sought to clarify, the Court preserved traditional safeguards of our criminal justice system against an effort to imply their abrogation from Congress's authorization of administrative IRS summonses for tax investigation purposes. Congress has explicitly acted to protect an interest which was not recognized prior to the enactment of section 7609 (*see, e.g., United States v. Bisceglia,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975)) and to hedge its own statutory creature, the section 7602 administrative summons, with certain safeguards for taxpayers whose activities are documented in records kept by third parties.

Critelli has, as already noted, not disputed the existence of a good faith tax investigation of Melbourne and the relevance of the summonsed items to that investigation. Nor has he seriously controverted petitioners' argument that the client names are necessary to trace the various transactions through Melbourne's records. Ordinarily, the IRS would have the right to view Melbourne's original records, without alterations of any kind (*United States v. Davey,* 543 F.2d 996, 1001 (2d Cir.1976)); hence unless section 7609 requires otherwise because of the IRS's supposed interest in Melbourne's clients' identities, respondents would have no right to tender redacted records in satisfaction of the summons.

I conclude that subsection 7609(f) is no bar to enforcement of the instant summons. The section 7609 protection afforded to third parties was structured with sufficient subtlety and with sufficient awareness of the then-applicable law to conclude that Congress would have expressly indicated the applicability of subsection 7609(f) to situations where an IRS summons has a dual purpose of both investigating the tax liability of a business concern and discovering the names of its clients with a view to investigating the clients' tax liabilities, had such application been intended. Rather, subsection 7609(f) was made applicable only in the narrow situation where "the person with respect to whose liability the summons is issued" is not identified. A dual purpose summons would have been enforceable prior to section 7609's enactment; if Congress should perceive that the privacy rights of business clients are excessively infringed by the continued use of such summonses without greater judicial supervision, then Congress must institute the means for their protection. The present subsection 7609(f) is utterly inappropriate for this purpose, as readily appears when one considers the consequences in this case if Critelli's contentions were to prevail.

There is evidence in the record that petitioner Govern represented to Critelli's attorneys that the IRS "had already discovered the identities of most of Melbourne's clients, [and] that any not discovered * * * would probably be discovered through the Service's normal return classification procedures." Govern Reply Affidavit ¶ 18. Of course, as far as the investigation of Melbourne is concerned, petitioners require Melbourne's clients' names in context in Melbourne's records, not in mere list form. But were Critelli to prevail on the theory that petitioners' alleged interest in Melbourne's clients' identities requires compliance with section 7609, it appears doubtful in view of Govern's admission that petitioners could satisfy the third criteria in that section, that "the information sought to be

obtained * * * is not readily available from other sources." Thus petitioners would be forced to accept incomplete copies of Melbourne's records, from which the crucial client names are lacking. Unless this court were itself to be the redactor of those names petitioners could have no assurance that the redaction was accomplished in a way that would permit correct tracing of the various transactions recorded. I am unwilling to conclude that Congress intended either to so hamper the IRS in its investigation of the records of business concerns or to so burden the courts by the enactment of subsection 7609(f). The good faith, legitimate purpose of the summons at issue with respect to Melbourne's tax liabilities must be held to preserve the summons from invalidation under subsection 7609(f) assuming, as this discussion has, that Critelli is correct regarding petitioners' interest in Melbourne's clients' identities.[3]

Alternatively, I hold as did the court in *United States v. Constantinides, supra,* that respondent has not persuasively demonstrated that discovery of Melbourne's clients' identities is a direct purpose of the instant summons, rather than a potential incidental result.

The petition to enforce the IRS summons is hereby ORDERED granted. Respondents are hereby ORDERED to comply with such summons forthwith.

**3.** I note that my holding here is buttressed by the reversal of the district court's decision in *Barter Systems* subsequent to the preparation of this Memorandum and Order. The United States Court of Appeals for the Eighth Circuit held subsection 7609(f) inapplicable to the summons in that case because the summons did identify the taxpayer and was therefore not a John Doe summons; reviewing subsection 7609(f)'s legislative history, the court found no "substantial countervailing policy" that would "limit any fallout or ancillary benefit the IRS might receive in conducting an investigation of a named taxpayer that also discloses information relating to other third parties." *United States v. Barter Systems, Inc.,* 694 F.2d 163, 168 (8th Cir. 1982). The court also noted, as have I, that a contrary interpretation would severely impede the IRS's ability to investigate the liability of the taxpayer in cases such as these. *Ibid.*

*United States v. Gottlieb,* 82–1 U.S.T.C. 83,-560 (M.D.Fla.1982), recently brought to my attention by respondent, essentially follows the district court's decision in *United States v. Barter Systems, supra,* and is rejected for the reasons stated herein and by the Eighth Circuit Court of Appeals in *Barter Systems.* Respondent's suggestion that there ought at least to be a hearing held with regard to the IRS's intention of investigating the tax liabilities of John Does is rejected on the grounds that, as I have already noted, respondent has not reasonably and adequately called into question the existence of a good faith investigation of Melbourne's own tax liabilities so as to justify nonobservance of the subsection 7609(f) John Doe summons procedure. *Cf. United States v. Marine Midland Bank of New York, supra,* 585 F.2d at 39.